October 11, 2002

**VIA TELECOPIER TO PLAINTIFF
AND THE COURT AS A COURTESY
& VIA ELECTRONIC SUBMISSION TO
THE COURT AND ALL PARTIES**

Honorable Magistrate Judge Cheryl L. Pollak
United States District Court for
the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  NAACP v. ACUSPORT et al.
>       99 Civ. 7037 (JBW)

Dear Magistrate Judge Pollak:

We write on behalf of distributors BONITZ BROTHERS, INC.; JERRY'S SPORTS, INC., D/B/A JERRY'S SPORT CENTER, NORTH EAST, INC.; JERRY'S SPORTS, INC. OUTDOOR SPORTS HEADQUARTERS, INC.; and SIMMON'S GUN SPECIAL[TIES] (collectively, "Jerry's"), to respond to Plaintiff's belated [request for] documents. Plaintiff's request to strike certain answers do not affect the Jerry's Defendants.

We ask the Court to enforce its prior oral ruling limiting Plaintiff['s discovery] against the JERRY'S defendants to total sales data for the years 1998 through [2000,] provided to Plaintiff previously, without objection. Now, *for the first time*, Plaintiff wants JERRY'S to produce information showing the handgun units sold (i.e., how many units were sold to each dealer or FFL for by each defendant for each [year 1998-] 2000). This outrageous, *new demand* for *individual* sales should be **rejected** by this Court by [cause] it presents an unbearable burden on the JERRY'S defendants. Although [earlier] demands to show total sales were burdensome, this new demand [for] individual records should not be tolerated, when the paper discovery period in this case [ended] August 30, 2002, by this Court's Order.

Initially, we note that Ms. Barnes [is not one of the Jerry's] defendants, however the caption to [...]

Honorable Magistrate Judge Cheryl L. Pollak                                    Page -2-
NAACP v. Acu-Sport
October 11, 2002

According to the Special Master's Report, based on [Bureau of Alcohol, Tobacco] and Firearms ("BATF"), there are approximately 80,000 active Federal Firearms [Licensees]. Report at 16. According to BATF publications, there [are] importers, and thousands of other FFLs. Although the NAACP seeks to [enjoin a] nuisance *in New York*, the Plaintiff has failed to name *any entity* — whether a manufacturer or distributor — who actually is located in the State of New York. For example, the [NAACP claims] that firearm dealers in New York somehow improperly permit handguns [to enter New York], but has not sued any firearm dealer who actually distributes [handguns in New York] either legally or illegally. Thus, the NAACP's claims that an injunction is needed on an[y such] basis are not supported by those actions which would, if t[aken, be brought] before a court of competent jurisdiction, but w[ould not necessarily invoke the] jurisdiction of *this court* which the NAACP apparently covets more dearly than obtaining jurisdiction over any entity within the State of New York who is involved in the firearm industry.

This background is important because Pl[aintiff, in its] *application to this Court dated October 8, 2002, and their letter to us dated October 3, 2002,* asked for JERRY'S all of its acquisition and disposition data. In the past, Plaintiff only sought "all documents that report or are sufficient to disclose the total number of handguns dis[tributed] by defendant." Plaintiff placed no date or time restriction on such documentation, wh[ich could be] in summary form. It is clear that Plaintiff never objected [to the production of documents] as long as it was sufficient to show the data requested, which it was for the y[ears in question]. Plaintiff has admitted in its application to this court that the information Plaintiff sought was only "sales data." Total sales data for each individual purchase is [distinguishable] from the acquisition and disposition reports and from th[e data] requested.

Now, the NAACP has requested that individual sales data, never before requested, in the form of acquisition and disposition repor[ts, be produced], alleging that a past request for this information was not complied [with. Based on the prior] requests made by Plaintiff NAACP for the production of documents to the JERRY'S defendants, it is clear that this new request for the acquisition and [disposition reports is one of many] new, burdensome, irrelevant discovery requests which call for acquisition and disposition reports or individual sales data which were never requested from the JERRY'S defendants by the NAA[CP] previously.

This Court should scrutinize the Plaintiff's counsel's analysis of its "need" [for the] data which appears in a single paragraph of p[laintiff's application]. Without any evidence in admissible form, Plaintiff claims that because it has "FOIA" documents from 1989-95 from the BATF (which are summary date for which JERRY'S ha[s not received] any of the various law enforcement agencies who purportedly initiated trace requests), [it is] entitled to JERRY'S sales and/or its acquisition and disposition data for th[e]

Honorable Magistrate Judge Cheryl L. Pollak                                          Page -3-
NAACP v. Acu-Sport
October 11, 2002

great mixing and matching game, for which Plaintiff has provided n[...] that Plaintiff requires date for this entire period in order to maximize the number of years [...] we have both sales data and crime gun data covering those sales. Thus, if [...] 1901 through FOIA, Plaintiff would argue that it should [...] sales, for each and every dealer, from 1901 to 2000!

In addition, Plaintiff claims that the time to cri[me] [...] significant at *three years or less*, yet seeks acquisition and disposition reports [...] 1989. If, for sake of argument alone, a party distributed handguns in 1989, which result[ed in] handguns turning up in trace reports (which do not p[...] 1992, what admissible proof could be offered as to that [...] the same reasoning, if a party distributed handguns in 1995, 1996 [...] reports in 1998, 1999 or 2000, what proof is that of any [...] seeks to obtain data in discovery which is irrelevant to [...] rejected because the NAACP seeks injunctive relief for a pub[lic nuisance and millions] of dollars in abatement, and for which it is not entitled unless it can show clear and convi[ncing] evidence that JERRY S, or others, are creating any public nuisance.

Generally, for a private party to claim a pu[blic nuisance, the] plaintiffs show that a *recent* condition has caused them to suffer special injury. For ex[ample, in] Hoover v. Durkee, 212 A.D.2d 839, 622 N.Y.S.2d 34[...] a preliminary injunction and then sought to permanently e[njoin the] raceway based upon of the theory of public nuisance. In April 1990, [...] the site. By June 1990, plaintiffs sought to permanently enjoin the raceway's op[erations...] the court did find that the raceway was a public nuisance and issued the permanent injunction. However, for our purposes, it is important [...] condition which plaintiffs sought to enjoin by means of a preliminary [injunction was current in] its interference with the community.

At the outside, in terms of discovery per[iod, in ___ v. ___] Group, Inc., 281 A.D.2d 449, 722 N.Y.S.2d 35 (2d Dep't 2001), plai[ntiffs claimed that an] adult shelter created a public nuisance because it induced nonresidents to reside in the to[wn without] proper screening or supervision, thereby burdening the town resources and threatening the public safety. Plaintiffs used statistics from data produced during discove[ry to establish the public] nuisance. These statistics were derived from intake data during a three year period between J[anuary] 1995 and June 1998. Obviously, even a three year period for [...] there should have been a faster response if the parties had special injuries requiring [abatement] for a public nuisance. Interestingly, the court rejected that claim be[cause plaintiffs failed to] establish by clear and convincing evidence a substantial and unreasonable [interference with a public] right. Plaintiff's statistics, in the Court's words, did not raise a material question o[f fact...]

Finally, Plaintiff claims that if the Court does not permit her to substitute, for her statistics, from other sources may result in delays in the announcement of findings. Application at 6. This Court should permit parties to rely on such findings. For Plaintiff to acknowledge that it has other sources available, at this time, is an admission that it does not need this new information. A discovery order which will require JERRY S and others to extract individual sales data from their computer systems, or elsewhere within their records, even as far back as to 1989, which may not be currently in use, is unreasonable and improper.

This Court should simply reject Plaintiff's belated requests because of cutting off paper discovery on August 30, 2002. However, if the Court grants Plaintiff's requests, the Court should then reject the NAACP's evidence, in admissible form, concluding that the NAACP has failed, even from 1997, to show by clear and convincing evidence that defendants are causing a public nuisance in 2002. Because this request is belated in this case, and because Plaintiff has supplied no proof that it needs this belated data request, Plaintiff's fishing expedition of JERRY S individual sales data should be denied.

Respectfully, Plaintiff's request for sales data from the JERRY S defendants for any period, including the entirety.

                      Respectfully submitted,

                      James P. Tenney (JT 4973)