UNITED STATES DISTRICT COURT
EASTER DISTRICT OF NEW YORK
----------------------------------------------------------------X

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
(NAACP)

                    Plaintiffs,                          99 Civ 3999 (JBW)
                                                          99 Civ 7037 (JBW)

       -against-

AMERICAN ARMS, INC./ACUSPORT CORP. et al.,

                    Defendants.
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT TAURUS HOLDINGS, INC.'S MOTION TO DISMISS

### INTRODUCTION AND SUMMARY OF ARGUMENT

     Defendant Taurus Holdings, Inc. (hereinafter referred to as "Taurus Holdings") has moved this Court for summary judgment dismissing it from this action claiming that it is not a proper party herein.  Taurus Holdings alleges that it is not properly a party to this action because it does not manufacture, import or distribute firearms.   Taurus Holdings' motion must be denied by  this court because Taurus Holdings is a shell and/or alter ego corporation for Taurus International Manufacturing, Inc., a firearms manufacturer with which it shares officers, employees, offices, owners, computer systems and even finances.   Under controlling New York law, where ostensibly separate corporations - such as Taurus Holdings and Taurus International Manufacturing -  operate with the same people, from the same location, commingling other essential corporate activities, assets and sharing the same corporate control, a court is entitled to disregard their allegedly separate corporate identities.  Accordingly, Taurus Holdings is not entitled to summary judgment.

<u>STATEMENT OF FACTS</u>

Plaintiff has obtained evidence in this case demonstrating that Taurus Holdings has virtually no separate corporate identity from Taurus International Manufacturing, Inc. ("TIMI"), a corporation admittedly in the business of manufacturing and assembling firearms.   Taurus Holdings, Inc. is a defendant in this action along with Taurus International Manufacturing, Inc., Forjas Taurus, S.A., and Braztech, Inc.

Taurus Holdings was incorporated by Forjas Taurus SA, a Brazilian gun manufacturing entity.

Plaintiff took the deposition of Taurus Holdings through its witness David Blenker on August 27, 2002.   All references to deposition transcripts herein are to Mr. Blenker's depositon, which is annexed hereto as Exhibit A.   Mr. Blenker revealed that Forjas Taurus owns 100% of the stock of Taurus Holdings.   (Tr. 7:17; 8:8-9).   Despite the fact that Taurus Holdings claims that it is a completely separate holding company from TIMI, the business of Taurus Holdings only relates to TIMI and Braztech and the manufacture and importation of firearms. Taurus Holdings owns:

- *Taurus International Manufacturing, Inc. (TIMI)*- which manufactures firearms.
- *Tamel Properties*: a real estate company with no employees and whose only possession is the property TIMI's manufacturing plant is located on.
- *Taurus Helmets*- a now defunct, if not dissolved, corporation.
- *Taurus Distributors*- which is not and was never an active corporation (Tr. 9:6-10:15).
- *Air Shot*- Another inactive corporation (Tr. 45:24-47:16).
- *Braztech International LC*.- an importer and distributor of firearms.[1]

---

1. Taurus Holding owns Braztech jointly as part of a partnership with "Esmond Financial Group." (Tr. 48:1-25).  Mr. Blenker, despite being the Vice President and Secretary of Taurus Holdings, for twelve years (Tr. 4:10-14) and being an officer of Braztech International (Tr. 42)  knew nothing about Esmond or who owns it except that it is located in the Cayman or British Virgin Islands.  Mr. Blenker testified that he attended partnership meetings in regard to Braztech but would not divulge the identities of the partners of Esmond Financial Group. (Tr. 40-43).

"Tamel Properties" is a real estate investment operation that owns only the property upon which TIMI's Miami plant is located. (TR. 14:10-12; 11; 13). Tamel Properties has  no employees. (Tr. 8-11).   Taurus Helmets, Taurus Distributors and Air Shot are inactive corporations.  It is not clear that they were ever active.

Thus the only "business" of Taurus Holding is its ownership of two firearms manufacturers and importers, the property on which their plant is located and three sham and inactive entities.  In fact, Taurus Holdings files one tax return, under Taurus Holdings, for all the entities it owns in whole or in part, and does not even include separate schedules for the entities.  (Tr. 18-19, 48-50, 56-57).  The principals of the corporations (other than Braztech) are the same.  (See, e.g. Tr. 66-67).

Taurus Holdings and TIMI's business are so intertwined and interwoven that TIMI is an alter ego of Taurus Holdings.  TIMI and Taurus Holdings have accounting software which "integrated together". (Tr. 17:23). Taurus Holdings and TIMI file consolidated tax returns, meaning one tax return, with TIMI listed as the taxpayer.  (Tr. 22-23).  The two companies have the same officers, in the same positions and it appears that their salaries are paid only through TIMI and not Taurus Holdings. (Tr. 25-28).  Taurus Holdings does not have any employees of its own.  (Tr. 37:2-5).  Nor does it have its own office location.

Should plaintiff obtain judgment in its favor, including a judgment against the Taurus defendants for injunctive relief and the costs of remediation of the public nuisance, plaintiff believes that it will be necessary to also have judgment against Taurus Holdings in order to enforce any relief granted by the Court.  Upon information and belief, Taurus Holdings is a sham corporation and is the alter ego of TIMI designed simply to frustrate creditors and therefore must remain in this action. Additionally, in the event that   That information would include but not be limited to tax returns.

3

<u>ARGUMENT</u>

**I.     UNDER NEW YORK LAW, TAURUS HOLDINGS IS A PROPER PARTY IN THIS SUIT .**

Although it holds itself out as a mere investment company, Taurus Holdings has no real investments except TIMI and Braztech (gun manufacturers and importers located in the same building and using the same employees and officers), a company which owns the land the companies offices are located upon and several dissolved or defunct corporations.  Taurus Holdings, TIMI and Braztech file consolidated tax returns that do not even include separate schedules for the corporations.  They operate out of the same offices.

Under controlling New York case law, where ostensibly separate corporations - such as Taurus Holdings and TIMI -  operate with the same people, from the same location, commingling other essential corporate activities, assets and sharing the same corporate control, a court is entitled to disregard their allegedly separate corporate identities and treat them as a single entity. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc*., 98 F.3d 13 (2d Cir. 1996).  *See also Bourgal v. Robco Contracting Enterprises, Ltd*., 969 F.Supp. 854 (E.D.N.Y. 1997)(granting plaintiffs' motion for summary judgment that three corporations constituted a single integrated enterprise and were the alter egos of each other and were all liable for delinquent benefits).

Although New York Courts are reluctant to disregard the corporate entity, they will do so when "the corporation has been so dominated by an individual or another corporation..., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego. " *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 138 (2d Cir. 1991) quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.

4

1979).  Under controlling New York case law, the trier of fact may consider a number of factors when making a determination that the activities of two corporations "are so entwined that they should be treated as one entity.  Among the factors the trier of fact may consider are:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence,...(2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address, telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own (emphasis added).

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

As the Second Circuit sets forth in *Wm. Passalacqua Builders*, not all of these factors must be present for a court to disregard the corporate form.  Instead, the trier of fact is to conduct the analysis based on the "totality of the evidence" presented in the "infinite variety of situations" brought by each individual case.  *Wm. Passalacqua Builders,* 933 F.2d at 139 (2d Cir. 1991).  Moreover, when evaluating the individual facts of each case, the trier of fact may conclude that the policy to protect those who deal with an ostensible corporation outweighs the policy to create limited liability through the corporate form.  *Id*.

In *Wm. Passalacqua Builders*, the underlying case involved an arbitration arising from a breach of contract.  Plaintiffs included a building contractor, Passalacqua, and two assignees of the rights under the contract, Safeco and General Insurance Company of America.  Defendants included several entities and individuals involved in building development, all of which were members of the Resnick family or were corporations controlled entirely by members of the Resnick family or by other corporations controlled entirely by them.  On October 23, 1972, plaintiff Passalacqua entered

5

into a contract with defendant Resnick Developers South, Inc. to construct a project in Florida.  The

parties were unable to resolve disputes that arose during the construction of the project, and plaintiff

Passalacqua sought arbitration and obtained an award.  Final judgment was entered in the amount of

$1,721,171 for damages caused by defendant Developers's breach of contract.  Prior to the entry of

judgment, Passalacqua assigned its right to enforce the judgment to plaintiff Safeco.  Only part of the

judgment was enforced by Safeco, thereby leaving a significant balance unpaid.  As a result of their

inability to collect fully on the judgment, Safeco and one of the other plaintiffs, General Insurance

Company of America, filed another action in the United States District Court for the Southern District

of New York.  In this second action, *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 134, the trial court

dismissed all but two alter ego claims.  After a trial on the merits, the jury found that Jack Resnick &

Sons, Inc. was not the alter ego of Developers.

On appeal, the Second Circuit remanded the case for a new trial because it found that

plaintiffs had presented enough evidence to show a substantial level of intermingling between the

corporate entities so as to justify piercing the corporate veil to reach the assets of either the individual

Resnick family members or the other Resnick-controlled corporate entities.   *Wm. Passalacqua*

*Builders,* 933 F.2d at 140.

Among the factors the Second Circuit relied upon in finding plaintiff had demonstrated to

justify piercing the corporate veil were that Developers, which was the corporation specifically set up

to develop real estate in Florida (1)  did not have any separate employees except its officers and

directors many of whom were also the officers and employees of the other corporate defendants, (2)

did not hold its own regular meetings or elect officers and directors, (3) was severely

undercapitalized, (4)  did not have its own corporate offices and office staff, (5) did not always pay its

6

employees itself but sometimes paid salaries through one of the other corporate defendants, (6) intermingled financial transactions between itself and the other defendant companies, and (7) did not always deal at arms length with the other defendant companies and sometimes sold property between themselves at below market value. *Id.* at 136-37.

In this case, defendant's own witness testified to just this sort of intermingling and disregard of the corporate form. All the corporations share office space and employees. Even the payment of salaries overlaps between the entities. Additionally, in filing joint consolidated tax returns through TIMI, it is clear that the finances of the corporations were mixed.

In *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996), the Second Circuit affirmed a judgment holding an ostensibly separate corporate entity to be the shell of another corporation because their activities were so commingled that they should be treated as one single entity. In *Bridgestone/Firestone*, Bridgestone/Firestone Corporation (hereinafter "BFI") was administering private label credit card programs and contracted with two collection agencies to collect delinquencies on credit card accounts. The two collection agencies included Recovery Credit Services, Inc. (hereinafter "RCS") and Revenue Recovery, Inc. (hereinafter RRI"). During an audit of RCS and RRIs' offices, a BFI agent found that collection records had been destroyed and not maintained as required.

As a result, plaintiff BFI filed suit against defendants, RCS, RRI and their principal, George Beladino. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d at 15. Evidence presented at trial showed that George Beladino dissolved RRI in December of 1990 and formed a new corporation, RCS, in September 1990. George Beladino testified that when he incorporated RCS, he "took over the business of RRI." *Bridgestone/Firestone, Inc.,* 98 F.3d at 17. After a review of the

evidence, the court held that George Beladino and RCS should be liable for damages attributable to RRI's misconduct.  He reasoned that RCS, RRI and George Beladino "should be treated as a single entity," because RCS and RRI were "shells that were mere 'alter egos' of Beladino." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 17 (2d Cir.1996).

On appeal, the Second Circuit affirmed piercing the corporate veil and found the following facts demonstrating the inseparability of the entities of RRI, RCS and George Beladino because the entities: (1) had the same corporate officer, (2) had the same sole employee, (3) maintained the same corporate records, (4) had the same corporate offices, phone, and stationery, (5) shuttled business between each other, and (6) shuttled funds between each other and another Beladino controlled entity. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 131, 139-140 (2d Cir. 1996).

Similarly, here plaintiff has developed evidence that Taurus Holdings has virtually no separate entity from TIMI because it (1) has no employees other than those of TIMI, (2) has the same corporate officers and directors as TIMI, all within the same positions as those of TIMI, (3) all employees salaries were paid by TIMI, (4) Taurus Holdings did not keep separate accounting information or software from TIMI, (5) has no corporate office separate from TIMI's office, (6) files no tax returns independent from TIMI, (6) has no real property separate from TIMI, and (7) does not have any <u>legitimate</u> non-firearm investments separate from TIMI, other than ownership of a real estate company whose only possession is the property on which TIMI's plant is located.  In short, this evidence supports plaintiff's position that TIMI and Taurus Holdings are one and the same and are sufficient to create a dispute of material fact with respect to Taurus Holdings' claim that it does not manufacture firearms, such that the trier of fact should be entitled to decide that issue based on all the evidence.

8

Moreover, the evidence summarized above demonstrates that the relationship between TIMI and Taurus Holdings also reflects an alter ego relationship where the courts have pierced the corporate veil to reach a parent corporation for the acts of its wholly-owned subsidiary. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d 24 (2d Cir. 1993). *See also Anderson Street Realty Corp. v. RHMB New Rochelle Leasing Corp.*, 243 A.D.2d 595 (N.Y.A.D. 2 Dept. 1997) (holding that lessee was alter ego of its parent corporation and allowing for piercing of corporate veil in suit by lessor for nonpayment of rent where evidence revealed there was an overlap in ownership, inadequate capitalization of lessee, payment of rent by parent, and where parent obtained premises insurance in its own name).

In *Carte Blanche*, the underlying case involved an arbitration based on a breach of a franchise agreement. The franchise agreement concerned the plaintiff Carte Blanche (Singapore) Pte., Ltd. (hereinafter CBS) and the defendant Carte Blanche International, Ltd. (hereinafter CBI). During the course of performance under the franchise agreement, CBI's parent corporation was purchased by another company which also owned Club International, Inc. (hereinafter Diners Club). CBI continued to provide services to CBS but it closed its California office and transferred all functions to its Diners Club offices in Denver. By the end of 1983, CBI had no separate offices, officers, books, or bank accounts and used Diners Club employees. The same person was chairman of both Diners Club and CBI. CBI eventually breached the franchise agreement and CBS was awarded a judgment against CBI. Unable to collect from CBI, CBS brought an action to pierce the corporate veil and collect the judgment from the corporate parent of CBI, Diners Club. The district court held that the corporate veil should not be pierced. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d at 28. On appeal, the Second Circuit reversed the district court's judgment

9

and found that the corporate veil should be pierced against the parent, Diners Club, because it was the alter ego of CBI. *Id*. at 28-29. The Second Circuit remanded with a direction to enter judgment in favor of CBS directly against Diners Club. *Id*. at 28-29.

In *Carte Blanche*, the Second Circuit reiterated that where the corporate form has been so dominated by another corporation, its separate identity should be disregarded. *See* discussion *supra* p. 2. The Second Circuit also held that the policy of protecting those who deal with the corporation outweighs the policy of corporate independence in such situations. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d at 26, citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). The Second Circuit set forth that such a circumstance that would makes piercing the corporate form necessary where honoring the corporate form leads to a wrong against a third party. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d at 26, citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138-139 (2d Cir. 1991). The Second Circuit explained that such a determination is fact-based and involves a case specific inquiry upon examination of a number of factors as set forth in the *Wm. Passalacqua Builders* case. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d at 26, quoting *Wm. Passalacqua Builders*, 933 F.2d at 139. *See* factors cited in discussion *supra* pp. 2-3.

The Second Circuit considered the factors set forth in *Wm. Passalacqua Builders* to pierce the corporate veil based on Diners Club complete domination and control of CBI because CBI: (1) had observed no corporate formalities for at least two years, (2) kept no corporate records, had no officers or directors elected in accordance with its by-laws, (3) had no assets and its initial capitalization was insignificant, (4) had no separate offices or letterhead, (5) had not paid employees,

(6) had no functioning board of directors, (7) had all of its revenues put into Diners Club's bank account and Diners Club paid all of its bills, (8) had no separate personnel or payroll—all employees were full-time Diners Club employees, (9) revenues and marketing reports were not recorded independently, and (10) Diner's Club's Chairman for the overseas Diners Club business was the only person who functioned on behalf of it. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club International, Inc.*, 2 F.3d at 28. Furthermore, the court recognized that CBI was also dominated and controlled by its grandparent, Citicorp, which owned Diners Club.

In the same way, plaintiff has developed evidence that Taurus Holdings dominates and controls TIMI because even though TIMI has the manufacturing functions, Taurus Holdings appears to have control of all of assets between the two corporations. Taurus Holdings wholly owns TIMI. In addition, Taurus Holdings exercises control over TIMI because TIMI (1) has no employees other than those of Taurus Holdings, (2) has the same corporate officers and directors as Taurus Holdings, all within the same positions as those of Taurus Holdings, (3) does not keep separate accounting information or software from Taurus Holdings, (4) has no corporate office separate from Taurus Holding's office, (5) files no tax returns independent from Taurus Holdings, and (6) Taurus Holdings owns the property where TIMI's manufacturing sits. Furthermore, the evidence shows that one of the other defendants in this case, Forjas Taurus, wholly owns Taurus Holdings. As recognized by the Second Circuit in *Carte Blanche*, TIMI is also likely dominated and controlled by its grandparent, Forjas Taurus. In short, this evidence supports plaintiff's position that Taurus Holdings is the parent corporation of TIMI and the facts are sufficient to create a dispute of material fact with respect to Taurus Holdings' claim that it does not manufacture firearms, such that the trier of fact should be entitled to decide that issue based on all the evidence.

II.     **AN AWARD OF SUMMARY JUDGMENT IN DEFENDANT'S FAVOR
        IS NOT APPROPRIATE HERE AS A MATTER OF LAW**

Moreover, whether corporations are alter egos of one another is a fact intensive issue, not suited to summary disposition. *Wausau Business Insurance Co. v. Turner Construction Co.*, 141 F.Supp.2d 412, 416 (S.D.N.Y. 2001). The facts in this instance demonstrate there is a dispute of material fact with respect to Taurus Holdings' claim that it "does not design, manufacture, market, sell or distribute" firearms. It is up to the trier of fact to determine whether, on the facts shown, Taurus Holdings is in fact a sham company, and is indistinguishable from TIMI, a corporation admittedly in the business of manufacturing firearms. Moreover, unless its sham corporate veil is pierced, Taurus Holdings stands in a perfect position to frustrate creditors of TIMI, which can readily transfer any assets to Taurus Holdings.

Because New York Courts consider piercing the corporate veil as a fact-intensive inquiry, they generally do not grant summary judgment in cases involving this doctrine. *Wausau Business Insurance Co. v. Turner Construction Co.*, 141 F.Supp.2d 412, 416 (S.D.N.Y. 2001)(denying summary judgment on issue of alter ego liability). As a result of this very fact-based inquiry, New York Courts have found that the issue should be decided by the trier of fact. *Id.* Moreover, because determining whether to pierce the corporate veil depends on the individual circumstances of each case, there is an articulated presumption against granting summary judgment in connection with such claims when they are arguably substantiated by factual evidence consistent with the claim. *David v. Glemby Co., Inc.*, 717 F.Supp. 162, 166 (S.D.N.Y. 1989)(denying summary judgment on issue of alter ego liability). *See also Holborn Oil Trading Ltd. v. Interpetrol Bermuda, Ltd.*, 774 F.Supp. 840 (S.D.N.Y. 1991)(denying summary judgment on issue of alter ego liability); *Shelley v. Flow International Corporation*, 283 A.D.2d 958 (N.Y.A.D. 4 Dept. 2001)(precluding summary judgment

12

in favor of subsidiary in personal injury suit where there were issues of fact as to whether subsidiary was parent's alter ego); *In re Silicone Gel Breast Implants Products Liability Litigation*, 887 F.Supp. 1447 (N.D.Ala. 1995)(precluding summary judgment because genuine issues of material fact presented on corporate control in products liability action); and *Rebh v. Rotterdam Ventures Inc.*, 252 A.D.2d 609 (N.Y.A.D. 3 Dept. 1998) (precluding summary judgment in favor of parent corporation in suit to pierce corporate veil and hold parent company liable for its subsidiary's debts where there were issues of fact as to whether the parent corporation completely controlled and dominated the subsidiary in furtherance of a scheme to denude the subsidiary of its assets to render it unable to honor its obligations).

WHEREFORE, plaintiff respectfully requests that the Court (i) deny defendant Taurus Holding's motion in its entirety; and (ii) grant such other and further relief as the Court deems just, proper and appropriate.

Dated:  New York, New York
             January 23, 2002

Respectfully submitted,

LAW OFFICE OF ELISA BARNES, P.C.

_____
MONICA CONNELL (MC 9841)
111 Broadway, 4th floor
New York, New York 10006
(212) 693-2330