July 9, 2003

Honorable Jack B. Weinstein
Senior District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      RE:  NAACP v. American Arms, et al., 99 Civ 3999 and 7037 (JBW)
            Submission by Plaintiff in Response to Decision of Appellate Division
            First Department in <u>People of the State of New York v. Sturm Ruger</u>

Dear Judge Weinstein:

      I write on behalf of plaintiff to respond to the letter of June 25, 2003 from counsel for defendant Colts enclosing the decision of the Appellate Division First Department in <u>People of the State of New York v. Sturm Ruger, et al.</u>, __ A.D. 2d __, 2003 WL 21457809 (June 24, 2003). In his letter submission, defendant's counsel argues that the decision of the Appellate Division is dispositive of the instant actions. For reasons stated below, plaintiff respectfully disagrees.

1

a) The Court Should Decline to Follow the Decision of the Appellate Division

As a matter of law, the Appellate Division's decision does not predetermine any findings to be made by the Court in this case. A federal court sitting in diversity need not apply the law of the state as found by an intermediate appellate court in the presence of "persuasive data that the highest court of the state would decide otherwise." Strubbe v. Sonnenschein, 299 F. 2d 185, 188 (2d Cir. 1962). The U.S. Supreme Court has held that there may be grounds for a federal court sitting in diversity to find that the decision of an intermediate appellate court is "not controlling' and proceed to make its own prediction of what the state's highest court would probably rule in a similar case." See King v. Order of United Commercial Travelers of America, 333 U.S. 153, 161 (1948).

The Court is entitled to look beyond the determination of the Appellate Division on the grounds that that court made fundamental errors in its decision to affirm the dismissal of the complaint of the New York State Attorney General in People of the State of New York v. Sturm Ruger that will likely result in reversal by the New York State Court of Appeals. The Appellate Division reached well beyond the four corners of the Attorney General's complaint to draw conclusions about evidence not in the record, rather than reviewing the pleading in the light most favorable to the non-moving party in accordance with established New York law. As the New York State Court of Appeals has recognized:

> [O]ur well-settled task is to determine whether, accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated. . . . We are required to accord plaintiffs the benefit of all favorable inferences which may be drawn from their pleading, without expressing our opinion as to whether they can ultimately establish the truth of their allegations before the trier of fact . . . Only recently re recognized the right of plaintiffs to seek redress, and not have the courthouse doors closed at the very inceptions on an action where the pleading meets a minimal standard necessary to resist dismissal of a complaint . . . If we determine that plaintiffs are entitled to relief on any reasonable view of the facts state, our inquiry is complete and we must declare the complaint legally sufficient.

Campaign for Fiscal Equality, Inc. v. State of New York, 86 N.Y.2d 307, 318 (1995). In reinstating this challenge to the constitutionality of New York's public school financing system, the New York Court of Appeals noted that in misapplying the correct procedural standard, the lower court in that case contended that the plaintiffs' claim was "virtually identical to the theory tried and rejected" in an earlier Court of Appeals decision in Board of Educ. v. Nyquist, 57 N.Y.2d 27 (1982) (the Levittown case). Campaign, 86 N.Y.2d at 315-16. However, the Court of Appeals rejected the lower court's reading of the Levittown, stating that it is "flawed and fails" because the plaintiffs were now advancing the "very claim that was not before us" in Levittown. Id. at 316. See also, Campaign for

Fiscal Equity, Inc. v. State of New York, __N.Y.2d __, 2003 WL 21468502 (June 26, 2003).

The Court of Appeals 1995 decision in Campaign for Fiscal Equity is instructive of how the Court of Appeals is likely to view the Appellate Division's dismissal of the complaint in People v. Sturm Ruger-- as a misapplication of the state's deferential pleading standard that is based on a misreading of the Court's own decision in Hamilton v. Berretta U.S.A. Corp., 96 N.Y.2d 222 (2001). The New York Court of Appeals recognized that the complaint in Campaign for Fiscal Equity advanced a claim that was not made in the earlier litigation and that a "fair, contextual reading" of the earlier decision left room for the subsequent complaint. 86 N.Y.2d at 316. The same is true here. The complaint in People v. Sturm Ruger and the instant action sound in the law of public nuisance not negligence. Public nuisance was not a cause of action before the Court of Appeals in Hamilton and as this Court has noted moreover, the Court of Appeals in Hamilton recognized that other evidence and circumstances might give rise to a different result. See NAACP v. Acusport Corp., 210 F.R.D. 446, 455 (2002) (citing Hamilton, 96 N.Y.2d at 233-34, 238, 242)("a duty might be established in a future case where a more direct causal link between the conduct of the manufacturers and the injury suffered by a plaintiff could be demonstrated.")

In addition to misapplying the applicable pleading standard, the Appellate Division improperly founded its decision on numerous factual assertions outside the record. As this Court is aware, some of the statements by the Appellate Division concerning the nature of the ATF trace data are outdated. The ATF trace data presented in this action directly addressed the issues left open by the Court of Appeals in Hamilton, providing extensive causal evidence linking each defendant with the harm.

Justice Rosenberger's dissent in People v. Sturm Ruger thoroughly articulates the anomalousness of the decision by the majority and provides the rationale for the reversal by the Court of Appeals. The Appellate Division's decision unsettles fundamental procedural standards, affecting thousands of cases throughout the First Department. As Justice Rosenberger found, the majority's decision "constitutes a novel and startling departure from established practice regarding CPLR 3211 (a)(7) motions." People of the State of New York v. Sturm Ruger,__ A.D.2d __, 2003 WL 21457809 (June 24, 2003) (Rosenberger dissent).

 b) People v. Sturm Ruger Does Not Bar the Instant Action on the Grounds of Res Judicata

Defendant contends that the instant action is barred on the basis of res judicata by People of the State of New York v. Sturm Ruger, __ A.D.2d __, 2003 WL 21457809 on the grounds that a 'private citizen has no cause of action to enjoin a public nuisance where the State, acting as *parens patriae*, has already instituted an action to enjoin the same alleged nuisance.' Def. Proposed Findings of Fact at p. 52. Defendants argument is fatally flawed on the applicable facts and law, on the following grounds: 1) the case brought by the Attorney General post dates the NAACP case; 2) the determination was

3

not a prior decision on the merits; and 3) the State's bringing of the case to vindicate its quasi sovereign immunity does not create privity with the plaintiff here suing to vindicate its separate claim for harm to itself and its members in this State.

The NAACP cases predate the filing of the case by the Attorney General of the State of New York by almost one year. See People v. Sturm Ruger, Decision of Justice York, August 10, 2001 at p.5: "Plaintiff's commenced this action in June 2000 asserting claims for statutory and common law nuisance." The instant cases were commenced in July and October 1999. The NAACP had already been actively litigating its case based on the harm caused to itself and its members in the State of New York for a year when the State filed its action which has not even progressed passed the filing of the complaint. Moreover, the NAACP had obtained crucial data not accessible to the State Attorney General that addresses issues left open by the New York Court of Appeals in Hamilton v. Beretta. This Court invited the State of New York to attend as an observer partly in recognition of the fact that the State does not have the ATF data and, given current policy, is unlikely to obtain access to it independently. NAACP v. AcuSport Corp., Order, March 20, 2003.

There has been no final determination of the State Attorney General's case that would effect the extraordinary relief defendants seek. The New York State Court of Appeals has recognized that the policy behind the bar of *res judicata* is to prevent relitigation of final determinations, on the merits, of causes of action by parties and those in privity with them, stating that:

> Sound public policy…requires that different judicial decisions shall not be made on the same state of facts, and that a judgment rendered … shall be conclusive, as to the questions litigated and decided, upon the parties thereto and their privies, whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving, the facts therein determined.

In re Shea's Will, 309 N.Y. 605, 616 (1956) citing New York State Labor Relations Board v. Holland Laundry, 294 N.Y. 480 (1945).

In contrast to the instant action, no "facts" or evidence were determined in the State's case. Under New York law, the Appellate Division's decision People v. Sturm Ruger is not a final determination on the merits after plaintiff had an opportunity to fully and fairly litigate a matter and thus the decision cannot be used offensively to rob plaintiff of its due process rights. Defendant's attempts to offensively use collateral estoppel and *res judicata* to prevent plaintiff from having the opportunity to put on its case must fail. As the Supreme Court has recognized in regard to litigants who have never had the opportunity to present their arguments and evidence on a claim, "[d]ue process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329 (1971); see also

4

Schwartz v. Public Administrator of the Co. of the Bronx, 24 N.Y.2d 65, 71, 298 N.Y.S. 2d 955, 960 (1969); see also, Hodge v. Hotel Employees, 269 A.D.2d 330, 331, 703 N.Y.S.2d 184 (1st Dep't 2000). (dismissal based upon defects in the pleading, not on the merits, does not present a *res judicata* bar to subsequent litigation.); Iwachiw v. New York City Board of Education, 194 F.S.upp.2d 194, 203 (E.D.N.Y. 2002) (Spatt, J.)(Judgment at the pleading stage is not a dismissal on the merits.); Plattsburgh Quarries, Inc. v. Palcon Ind. Inc., 129 A.D.2d 844, 845, 513 N.Y.S.2d 861, 862 (N.Y.A.D. 1987). (The "traditional rule" in New York State law is that "unless the judgment specifies that it is on the merits, it will not be given *res judicata* effect except to the extent that the judgment will be deemed conclusive as to the point it decided." );  Colon v. Bermudez, 61 Misc.2d 255, 260, 305 N.Y.S.2d 630, 637 (Kings Co. Civ. Ct. 1969) ("It should be noted that *res judicata* effect is not given to a legal proceeding unless there has been a final judgment on the merits rendered by a court of competent jurisdiction and is conclusive as to the rights of the parties or their privies and bars a subsequent action between the parties, litigating in the same capacity, on the same cause of action.")

Finally, there is no authority for defendant's claim that the commencement of the Attorney General's action against some gun makers and distributors to vindicate a quasi sovereign interest bars the NAACP from continuing its own case to vindicate its separate injury. The State has standing to bring its public nuisance action only "to express a quasi-sovereign interest." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 607 (1982).  By suing in *parens patriae* the State must seek to redress an injury that is separate from the interests of separate individuals. People of the State of New York v. Seneci, 817 F. 2d 1015, 1017 (2d Cir. 1987).   The NAACP is a separate individual seeking relief for injury to itself and its members, which the State cannot represent. Accordingly, In re Durso Supermarkets, Inc. 1995 U.S. Dist. LEXIS 18440 (S.D.N.Y. 1995) is simply inapposite.

Defendants mistakenly rely on United States v. Olin Corp., 606 F. Supp. 1301, 1307 (N.D. Ala 1985) and Badgley v. City of New York, 606 F.2d 358, 364-65 (2d Cir. 1979) to support the argument that once the State has commenced a *parens patriae* case, subsequent individual actions are barred.  Both Olin, an Alabama case,  and Badgely are factually distinguishable from the instant action. Olin is distinguishable on the grounds that the action sought to be barred did not seek to vindicate plaintiff's special injuries or separate rights. (The Court noted that the plaintiffs could not make out the third prong of the public nuisance standard, that the injury suffered by the plaintiff must be  "distinct in kind and degree from that suffered by the public in general." Olin, 606 F. Supp. at 1307.) Further, the Olin plaintiffs confronted a prior, fully litigated action. Badgely v. City of New York is limited to its very specific facts involving the derivation of land title rights by private citizens from the state.  In Badgely, the Second Circuit found that an earlier case by the State of Pennsylvania against New York regarding diversion of the Delaware River for use by the City of New York determined all the rights available to the riparian owners of property along the Delaware River in Pennsylvania.  In reversing the District Court's denial of defendants motion to dismiss on the grounds of *res judicata*, the Second Circuit found that although the State of Pennsylvania could not represent individual Pennsylvania claimants in a case under the original jurisdiction of the Supreme Court, the

5

prior case had in fact disposed of all of the riparian rights individual Pennsylvania landowners possessed as they derived those rights solely from the State of Pennsylvania and Pennsylvania's rights in the Delaware River had previously been litigated.

The State and the NAACP may both pursue their public nuisance actions seeking to vindicate their respective interests and injuries. See Satsky v. Paramount Communications, Inc., 7 F.3d 1464, 1470 (10th Cir. 1993), see also Ouellette v. International Paper Company, 602 F.Supp. 264 (D.Vt 1985), aff'd 776 F. 2d 55 (2d Cir. 1985), aff'd in part rev'd in part, 479 U.S.481 (1987) remanded 666 F. Supp. 58 (D. Vt. 1987).

Based on the foregoing and the prior submissions by plaintiff, it is respectfully requested that the Court adopt plaintiff's proposed findings of fact and conclusions of law in their entirety and for such other and further relief as this Court may deem just and proper.

                              Respectfully submitted,


                              Elisa Barnes

via fax and regular mail
cc:  Mr. Michael Rice, Esq. for Defendants
      via fax and electronic case filing